IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-259-FL

| | |
|---|---|
| MARIA L. MOLINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 25, 29).[1] In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants defendant's motion, denies plaintiff's motion, and upholds the final decision of the Commissioner of Social Security ("Commissioner").

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on October 21, 2010, alleging disability beginning October 20, 2010. This application was denied initially and upon reconsideration. Hearing was held before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated November 18, 2011. On March 6, 2012, the Appeals Council denied plaintiff's request for review of the ALJ decision, and plaintiff filed this action on May 10, 2012, for review of the final decision of the Commissioner.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

**DISCUSSION**

A.      Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff was not engaged in gainful employment. At step two, the ALJ found that plaintiff had the following severe impairment: hip dysplasia with arthritic right hip. However, at

step three, the ALJ further determined that plaintiff does not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, except limited to only occasionally performing postural activities. The ALJ determined that plaintiff could not perform her past relevant work, but that plaintiff could adjust to the demands of other employment opportunities existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

B.   Analysis

Plaintiff raises three assignments of error in her motion. First, she argues that the ALJ erred by finding that her mental illness is not a severe impairment. (Pl's Mem. 4-5). Relatedly, she argues that the ALJ erred in failing to develop the record further in assessing her mental illness. (Id. at 8-9). Finally, she argues that the ALJ improperly assessed the opinion of her treating physician regarding plaintiff's hip dysplasia and pain. (Id. at 5-7).

   1. Severity of Mental Illness

Under the multi-step disability evaluation process, a claimant bears the burden of showing that she has a "severe" impairment or combination of impairments, which is an "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "When [the Commissioner] evaluates the severity of mental impairments . . . [the Commissioner] must follow a special technique at each level in the administrative review process." 20 C.F.R. § 404.1520a(a). Under this special technique, if the ALJ

3

rates the degree of limitation in four functional areas as "none" or "mild," the ALJ "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). "An impairment can be considered as 'not severe' only if it is a <u>slight abnormality</u> which has such a <u>minimal effect</u> on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original; citations omitted); SSR 85-28, 1985 WL 56856 *3.

In this case, the ALJ determined that plaintiff had a medically determinable mental impairment of "dysthimic disorder," but that this impairment was not severe. (Tr. 15). In making this determination, the ALJ applied the special technique, under 20 C.F.R. § 404.1520a(d)(1), and concluded that plaintiff's mental impairment causes no more than "mild" limitations in three functional areas and no episodes of decompensation. (Tr. 16). The ALJ discussed medical evidence of record and other record evidence bearing on his assessment, including a consultative examination report and medical source statement by Dr. Lefebvre, as well as the fact that plaintiff had never sought mental health treatment prior to this evaluation or after it. (Tr. 16).

The ALJ's severity determination was thus "reached through application of the correct legal standard," and in accordance with the proper procedures for evaluating plaintiff's mental impairment. <u>Craig</u>, 76 F.3d at 589. Accordingly, the court does "not undertake to re-weigh conflicting evidence," but rather upholds the finding of the ALJ if it is supported by substantial evidence, being "more than a mere scintilla of evidence but . . . somewhat less than a

4

preponderance." Id.  As set forth below, the ALJ's finding meets this standard here.

In particular, evidence supporting the ALJ's finding that plaintiff's dysthimic disorder is not severe includes the following.  Plaintiff saw Mark F. Lefebvre, Ph.D, one time, on August 8, 2011, for a consulting mental health evaluation.  (Tr. 355-357).  In his report of the evaluation, Dr. Lefebvre provided a diagnosis of "Dysthymic Disorder," which is a disorder "characterized by symptoms of mild depression." Dorland's Illustrated Medical Dictionary 582 (32nd ed. 2012); see Robinette v. Shalala, No. 94-1697, 1995 WL 151867 *2 (4th Cir. April 7, 1995) (noting a diagnosis of dysthimia is "mild depression").  As such, the diagnosis itself provides evidence that plaintiff's disorder had such minimal effect that it would not be expected to interfere with plaintiff's work.

In combination with this diagnosis, as noted by the ALJ, plaintiff had never sought mental health treatment from a mental health provider before or after the consultation with Dr. Lefebvre. (Tr. 15).  The fact that plaintiff had not sought mental health treatment, in combination with the diagnosis given, suggests that the impairment was not so significant as to interfere with plaintiff's work. While the ALJ considered testimony by plaintiff and her family regarding plaintiff's depression, (Pl's Mot. at 4-5), the ALJ gave little weight to subjective statements in light of the objective evidence in the record, including lack of mental health treatment.  Cf. Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring) ("[I]t was not improper for the ALJ to consider the level and type of treatment [claimant] claimant sought and obtained in determining the weight to accord her allegations" of impairment).

Moreover, "[i]f a symptom can be reasonably controlled by medication or treatment, it not disabling." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986). And, "[i]n order to get benefits,

5

[claimant] must follow treatment prescribed by [claimant's] physician if this treatment can restore [claimant's] ability to work."  20 C.F.R. § 404.1530.  Here, as the ALJ noted, Dr. Lefebvre recommended "cognitive behavior therapy focused on depression and pain coping." (Tr. 15, 356). Dr. Lefebvre also recommended "antidepressant medication." (Tr. 357). "The fact that plaintiff's depression appears to have been controllable by medication provides further support for the ALJ's finding that this aspect of her mental impairments was nonsevere during the relevant period." Collier v. Astrue, 7:11-CV-68-D, 2012 WL 3095099 *6 (E.D.N.C. June 22, 2012).

Relatedly, there is a lack of objective medical evidence in the record regarding the length in time during which plaintiff experienced "functional loss" due to her mental health disorder. Gross, 785 F.2d at 1166.  As noted by the ALJ, the consultative evaluation by Dr. Lefebvre at a single point in time, is not sufficient to show a "chronic or significant impairment" meeting the 12 month duration requirement under the regulations.  (Tr. 15); see 20 C.F.R. § 404.1509.  "[T]he burden is on the claimant to furnish 'evidence supporting the existence of a condition and the effect of that condition on the claimant's ability to work on a sustained basis.'" Gatling v. Astrue, 2:11-CV-21-FL, 2012 WL 4357013 *5 (E.D.N.C. Sept. 21, 2012) (quoting Aytch v. Astrue, 686 F. Supp. 2d 590, 599 (E.D.N.C. 2010)).  Where plaintiff did not produce objective medical evidence of mental health impairment other than a one-time consultative examination, substantial evidence supports the ALJ's determination that plaintiff did not meet that burden here.

Plaintiff argues that the ALJ erred in failing to give weight to Dr. Lefebvre's own comments in his evaluation report and in a medical source statement regarding the severity of plaintiff's depression. (Pl's Mot. at 4-5).  In particular, Dr. Lefebvre noted that plaintiff "completed the Beck

6

Depression Inventory-II on which she obtained a score of 45 which is indicative of severe depression." (Tr. 356). Dr. Lefebvre noted in a medical source statement that plaintiff developed severe chronic depression secondary to her disabling chronic pain. (Tr. 396). The ALJ, however, discussed Dr. Lefebvre's medical source statement, and gave it "little weight" for the reasons stated above supporting a finding that plaintiff's mental impairment was not severe. (Tr. 15). "[I]f a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Accordingly, where the ALJ addressed conflicting evidence in the record, and explained the weight given to relevant evidence, it is not the role of this court to re-weigh the evidence. As the ALJ's determination regarding the severity of plaintiff's mental impairment was supported by substantial evidence, the court must uphold the determination of the ALJ.

2. Developing the Record

Plaintiff argues that the ALJ erred in failing to develop the record further in assessing her mental illness. Plaintiff asserts the ALJ should have arranged for a further consultative exam or obtained further information from Dr. Lefebvre regarding the duration and severity of plaintiff's symptoms. (Pl's Mot. at 8-9).

"While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'go to inordinate lengths to develop a claimant's case.'" Craft v. Apfel, No. 97-2551, 1998 WL 702296, at *3 (4th Cir. Oct. 6, 1998) (quoting Thomas v. Califano, 556 F.2d 616, 618 (1st Cir.1977)). "The pertinent inquiry is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to [claimant's] alleged mental impairment,' without the

7

need for a second consultative psychological examination." Craft, 1998 WL 702296 at *3 (quoting Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989)).

In this case, the ALJ had sufficient medical evidence before him to make an informed decision about plaintiff's mental impairments. Where the decision in this case was based in part upon a lack of mental health treatment in the record, an additional consultative examination, without additional treatment, would have no impact on the ALJ's decision. See Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) (noting that an ALJ's failure to fully and fairly develop the record is an appropriate basis for remand where "such failure is prejudicial to the claimant"); Binion v. Shalala, 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."). While plaintiff faults the Social Security Administration for failing to "deal[] with her allegations of depression when they were raised," it is not the Commissioner's or the ALJ's duty to furnish the objective medical evidence supporting plaintiff's disability claim. Rather, as noted above, the burden is on plaintiff to furnish such evidence. See Gatling, 2012 WL 4357013 *5.

Accordingly, the ALJ did not err in failing to further develop the record regarding plaintiff's mental illness.

3. Assessment of Treating Physician Opinion

Plaintiff argues that the ALJ improperly assessed the opinion of her treating physician, Dr. Lawrence Yenni, regarding plaintiff's hip dysplasia and pain. In particular, in March 2011, in a checkbox medical source statement form, Dr. Yenni opined that plaintiff was not capable of performing any sedentary or light work due to her physical impairment, and that she had severe

8

restrictions on all categories of work activities due to pain resulting from the impairment. (Tr. 398-401). The ALJ described in detail in his decision the evidence in the record regarding plaintiff's hip dysplasia and pain, including treatment notes by Dr. Yenni, of examinations in June 2010, October 2010, December 2010, and July 2011, as well as Dr. Yenni's medical source statement. (Tr. 16-17) In assessing the weight to be given to Dr. Yenni's opinion, the ALJ stated:

> Little weight was given to the medical source statement of treating provider, Lawrence Yenni, M.D. Dr. Yenni provided several severely limiting work restrictions. However, as demonstrated above, they are not supported by the record evidence as a whole, including his own treatment records.

(Tr. 17).

Treating source opinions are entitled to controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the case record." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (emphasis in original) (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. A treating physician's opinion may be rejected, for example, where the physician's "own medical notes did not confirm his determination of 'disability.'" Id.

The ALJ's conclusion that Dr. Yenni's opinion was not supported by "the record evidence as a whole, including his own treatment notes," (Tr. 17), is supported by substantial evidence. In particular, treatment notes by Dr. Yenni describe functional abilities and improvements following medical treatment, which conflict with the severely limiting work restrictions noted in Dr. Yenni's medical source statement. On June 30, 2010, Dr. Yenni noted a "normal gait," "no significant

9

mechanical symptoms," and a range of motion in the hip with pain noted. (Tr. 373). Dr. Yenni noted x-rays showing degenerative changes with bony spurring particularly along the medial aspect of the right hip. (Tr. 374; 368). Dr. Yenni diagnosed plaintiff with hip pain, "probably related to dysplastic hip on the right side and degenerative changes on the left," and he recommended treatment "symptomatically at this point" with medication. (Tr. 374). On October 20, 2010, Dr. Yenni noted "mildly antalgic gait"; pain with internal rotation of the left hip; no significant pain of the right hip in the supine position; pain on external rotation in the seated position. (Tr. 376). Plaintiff had good "manual motor testing about the hips for hip flexion, adductors and abductors," and intact "distal motor and sensory." (Id.) Plaintiff was offered and agreed to a pain medication injection in both hips. (Id.). Following treatment as recommended, including injections done three weeks prior, on December 1, 2010, Dr. Yenni reported that plaintiff "continues to have good relief of her hip pain on both the right and left side," and "[n]o new complaints are voiced." (Tr. 377). Plaintiff had "normal gait pattern, somewhat waddling," with intact distal motor and sensory. (Id.). She was provided prescription medication for use as needed.

The notes of these three treatment visits, all of which occurred prior to Dr. Yenni's medical source statement, serve as substantial evidence that plaintiff's symptoms were not as severe as reflected in the medical source statement and were capable of being controlled by medication. Between June 2010, when plaintiff was first examined and started medication, and December 2010, when Dr. Yenni reported she "continues to have good relief of her hip pain," plaintiff's condition improved with medication, and her physical examination findings, such as gait, and motor and sensory, remained stable. (Tr. 374, 377). Moreover, Dr. Yenni instructed plaintiff to return on an

10

as needed basis. (Tr. 377). It is significant in this regard that plaintiff did not return for treatment until July 14, 2011. At that point it was again noted that she had an "injection in the past with good relief," but she wanted to hold off "for now" on further injection. (Tr. 379). Dr. Yenni noted "[s]he has some irritability with internal and external rotation of the hips, but she does not have significant limitation." (Id.). In sum, substantial evidence in Dr. Yenni's treatment notes supports the ALJ's determination to give little weight to the medical source statement opinion providing for severely limiting work restrictions.

While plaintiff points to evidence in Dr. Yenni's treatment notes which plaintiff contends is "not inconsistent" with his opinion, such as objective signs of pain, prescriptions for pain medication, and possibility of future hip replacement surgery, (Pl's Mem. at 6-7), the ALJ noted these same aspects of the treatment notes, but concluded that the opinion, providing severe work restrictions, was in conflict with the evidence as a whole. (Tr. 16-17). Where, as here, the record includes conflicts in the evidence, the court does not substitute its judgment for that of the ALJ. As noted above, where many aspects of the treatment notes are inconsistent with Dr. Yenni's opinion, including plaintiff's positive response to ongoing treatment, the court shall not undertake to re-weigh the evidence. Craig, 76 F.3d at 589.

Plaintiff argues that, even if the ALJ may have found Dr. Yenni's opinion inconsistent with his notes, that would only mean that it was not entitled to controlling weight, not that it should have been given "little weight." (Pl's Mem. at 7). However, once the ALJ determined that Dr. Yenni's opinion was inconsistent with other substantial evidence, the ALJ was entitled to give it "significantly less weight" and to "reject[]" it outright, under the law of this circuit. Craig, 76 F.3d

at 590 (concluding that "sufficient evidence justifies the ALJ's rejection of Dr. Keller's conclusory opinion and his finding that the record contains persuasive contradictory evidence (including Keller's own notes)").

Plaintiff also notes that the ALJ instead gave great weight to the opinions of state agency assessments, only one of which was completed by a doctor who is not a specialist and who did not examine plaintiff. (Id.). Plaintiff argues that in light of the more involved treatment relationship, Dr. Yenni's opinion was entitled to more weight, and "Dr. Yenni's opinion is sufficient for this Court to make a finding that [plaintiff] is disabled." (Id.). Plaintiff, however, again misconstrues the role of this court. The issue is not whether the evidence is sufficient for the Court to find plaintiff disabled, but rather "whether the ALJ's finding that she is not disabled is supported by substantial evidence." Craig, 76 F.3d at 589 (emphasis added). As with other evidence in the record, the responsibility for weighing the conflicting medical opinions, including taking into account relevant qualifications and treatment history, rests with the ALJ and not the court. See id. Accordingly, where substantial evidence supports the ALJ's determination to give Dr. Yenni's opinion little weight, the decision of the ALJ must be upheld.

## CONCLUSION

Based on the foregoing, the court DENIES plaintiff's motion for judgment on the pleadings (DE 25), GRANTS defendant's motion for judgment on the pleadings (DE 29), and AFFIRMS the final decision by the Commissioner. The clerk is DIRECTED to close this case.

SO ORDERED this the 7th day of August, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge